IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 19-cv-00190-RBJ-NYW

WILDGRASS OIL AND GAS COMMITTEE,
Plaintiff,

v.

STATE OF COLORADO; JARED S. POLIS, in his official capacity as Governor of the State of Colorado; COLORADO OIL AND GAS CONSERVATION COMMISSION; and JEFFREY ROBBINS, in his official capacity as Acting Director of the Colorado Oil and Gas Conservation Commission,
Defendants, and

COLORADO OIL & GAS ASSOCIATION and THE AMERICAN PETROLEUM INSTITUTE,
Defendants-Intervenors.

## MOTION TO DISMISS

PHILIP J. WEISER
Attorney General
ERIC R. OLSON, #36414*
Solicitor General
KYLE W. DAVENPORT, #36674*
Senior Assistant Attorney General
WILLIAM V. ALLEN, #26386*
Senior Assistant Attorney General
DAVID A. BECKSTROM, #44981*
Assistant Attorney General
Colorado Department of Law
1300 Broadway, 7th Floor
Denver, CO  80203
eric.olson@coag.gov (720) 508-6548
kyle.davenport@coag.gov (720) 508-6292
jeff.fugate@coag.gov (702) 508-6290
will.allen@coag.gov (720) 508-6632
*Counsel of Record
*Attorneys for Defendants*

**INTRODUCTION**

Wildgrass asks this Court to invalidate statutory pooling, an essential part of Colorado's regulatory regime that protects important state interests. Wildgrass makes this request despite a substantial body of federal and state case law holding that statutory pooling is constitutional, despite the fact that this Court has already declared it does not intend to grant this relief, [1] and despite the fact that Colorado's legislature recently modified the pooling laws to give greater protections to non-consenting leasehold owners. [2]

Wildgrass's Amended Complaint mounts a facial constitutional challenge to Colorado's pooling laws, § 34-60-116(6)-(7), C.R.S. (2018) and Commission Rule 530, [3] ( collectively the "Pooling Laws"), and seeks a statewide injunction. Wildgrass's claims must fail because the Pooling Laws offer a meaningful opportunity to be heard, the statutory pooling is rationally related to important state interests of preserving waste and protecting correlative rights, and statutory pooling does not implicate Freedom of Speech or the Contracts Clause. To the extent that Wildgrass brings an as-applied challenge to statutory pooling, Defendants request that the Court dismiss those claims because they are either not properly before this court or because there was no violation as a matter of law. Separately, the Eleventh Amendment compels the dismissal of the Governor.

---

[1] During the February 12, 2019 hearing on Plaintiff's Motion for Temporary Restraining Order, this Court stated "I mean, if you think I am going to enjoin forced pooling. . .not going to happen. If you think I am going to tell [the Commission] and the rest of the world forced pooling is over in Colorado, not going to happen. . ..If you think I'm going to say, You're not going to fracture in Colorado, that's a political issue." ECF No. 37, 7:15-22.

[2] On April 16, 2019, the Governor signed Senate Bill 19-181 ("SB19-181") into law as an omnibus bill substantially modifying the Oil and Gas Conservation Act. Statutory pooling remains in the Act following the passage of SB19-181 and was not limited to any specific type of mineral or development technique. Wildgrass's action was brought prior to the effective date of SB19-181 and references to the Act are to the version applicable to the Complaint.

[3] Commission Rules are found at 2 Colo. Code Regs. 404-1, available at http://cogcc.state. co.us/reg.html#/rules ("Rule" or "Rules").

## I.     Statutory pooling serves important and legitimate state interests.

Spacing and statutory pooling are bedrocks of Colorado's regulation of oil and gas development, and have been part of the Colorado Oil and Gas Conservation Act, §§ 34-60-101 – 130, C.R.S. ( "Act") since 1951. These symbiotic tools are fundamental to preventing waste, protecting correlative rights, and minimizing impacts to public health, safety, welfare and the environment.

The Colorado Oil and Gas Conservation Commission ("Commission") is charged with the regulation of oil and gas operations in Colorado, including the establishment of spacing units and pooling orders. The legislative declaration of the Act states that, among other things, it is in the public interest to: "(II) Protect the public and private interests against waste in the production and utilization of oil and gas; [4] (III) Safeguard, protect, and enforce the coequal and correlative rights of owners and producers in a common source or pool of oil and gas to the end that each such owner and producer in a common pool or source of supply of oil and gas may obtain a just and equitable share of production therefrom. §34-60-102(1)(a), C.R.S.[5] To implement the Act, the Commission "has promulgated an exhaustive set of rules and regulations to prevent waste and to conserve oil and gas in the State of Colorado while protecting public health, safety, and welfare." *City of Longmont v. Colo. Oil and Gas Ass'n*, 369 P.3d 573, 584 (Colo. 2016). The State's system of spacing and pooling enables the Commission to meet these important policy goals.

---

[4] "Waste" is defined in part as "the locating, spacing, drilling, equipping, operating or producing of any oil or gas well or wells in a manner which causes or tends to cause reduction in the quantity of oil or gas ultimately recoverable. §34-60-103(13)(b), C.R.S.

[5] "Correlative rights" are the rights of every mineral owners to have "an equal opportunity to obtain and produce his just and equitable share of the oil and gas underlying such pool or source of supply." §34-60-103(4), C.R.S.

2

Spacing and pooling work hand-in-hand to serve important state interests. "Pooling, whether voluntary or compulsory, serves important public purposes, including the prevention of waste, the conservation of oil and gas, and the protection of correlative rights." Patrick H. Martin & Bruce M. Kramer, *The Law of Pooling and Unitization* §10.01, 10-2, (3rd ed. 2011).[6] Pooling also "minimizes the number of wells that have to be drilled in order to efficiently drain a reservoir." *Id*. Imposing limits on the number and location of wells maximizes recovery of the resource by avoiding overproduction of an oil and gas reservoir, ensures that only those wells that are necessary to efficiently develop the pool are drilled thus minimizing surface impacts.

## II. The Commission heard all of Wildgrass's arguments at the March 12, 2019 pooling hearing.

On March 12, 2019, the Commission heard Extraction Oil and Gas, Inc.'s ("Extraction") application to pool all interests in a spacing unit (the "Application"). Wildgrass protested the Application and the Commission heard all of Wildgrass's arguments and issues concerning that Application. Following an approximately seven-hour hearing during which Extraction and Wildgrass presented evidence, testimony, and argument, and were afforded the opportunity to cross-examine adverse witnesses, the Commission approved Extraction's Application. *See* Commission Order 407-2771, ECF No. 44-1; *see also* Transcript of March 12 Comm'n Hrg., ECF No. 51.[7] In accordance with this Court's order, ECF No. 37 at 16:24-17:10, Wildgrass was provided a meaningful opportunity to argue a broad range of issues, including the reasonableness of lease offers from Extraction to its members, Extraction's financial viability, and public health,

---

[6] Spacing and pooling are discussed in greater detail in the State's Response In Opposition to Motion for Temporary Restraining Order, ECF No. 29.

[7] Wildgrass and the State have filed with this Court the transcript and various documents from those proceedings, each of which speaks for itself and provides a full account of the proceeding.

safety, and welfare, and environmental impacts associated with the proposed oil and gas development. *See* ECF No. 44-1.

## STANDARD OF REVIEW

"[T]o withstand a Rule 12(b)(6) motion to dismiss, a complaint must contain enough allegations of fact, taken as true, 'to state a claim to relief that is plausible on its face[,]'" *Khalik v. United Air Lines*, 671 F.3d 1188, 1190 (10th Cir. 2012) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)), and the "plaintiff 'must nudge [its] claims across the line from conceivable to plausible. . ..'" *Id.* In evaluating the complaint, the Court disregards "conclusory statements and look[s] only to whether the remaining, factual allegations plausibly suggest a defendant is liable." *Id*. at 1190.

## ARGUMENT

### I.     Due Process – Procedural

Wildgrass claims it was denied procedural due process because: (1) the Commission "fail[ed]/refus[ed] to decide whether it had jurisdiction on the matter and still proceeded to vote on the forced pooling application[,]" Am. Compl., ¶ 108; and (2) "the Act allows the COGCC to deprive a party of property without engaging fair procedures to reach a decision." Am. Compl., ¶ 111. Wildgrass's due process claim fails because: (1) the Commission properly asserted jurisdiction over the Application, (2) Wildgrass was afforded a meaningful opportunity to be heard, and (3) because the Act and Commission Rules provide all interested parties substantial process prior to the entry of a pooling order.

#### A.     Wildgrass's "as applied" challenges to the Commission proceedings are not ripe because additional proceedings are available to Wildgrass under state law.

The Pooling Order is final agency action of the Commission resulting from a quasi-adjudicatory proceeding to which Wildgrass was a party. Am. Compl., ¶¶ 50-104. In its due

process claims, Wildgrass makes conclusory statements of procedural defects in the Commission proceedings. Am. Compl., ¶¶ 108-09 and 114. To the extent that Wildgrass alleges that the Commission deprived it of a fair hearing or improperly entered the Pooling Order, Wildgrass should have brought those claims before the state courts under Colorado's Administrative Procedure Act, §§ 24-4-101 – 108, C.R.S. ("State APA"), and specifically the provision for judicial review of final agency actions. See § 24-4-106, C.R.S.; see also § 34-60-111, C.R.S. ("Any . . .final order of the commission shall be subject to judicial review in accordance with the provisions of section 24-4-106, C.R.S."). Additionally, under the State APA, any such claims must have been brought within 35 days of entry of the Pooling Order, §24-4-106(4), C.R.S., which Wildgrass failed to do.[8] Wildgrass failed to follow the state procedures for review of the Pooling Order and "cannot be permitted to let the time for seeking a state remedy pass without doing anything to obtain it and then proceed in federal court on the basis that no state remedies are open." *Gamble v. Eau Claire County*, 5 F.3d 285, 286 (7th Cir. 1993) (affirming dismissal of takings and substantive due process claims because plaintiff "fail[ed] to pursue her state judicial remedies").

### B. This Court should dismiss under the *Burford* abstention doctrine.

To the extent the Court determines that any claims are properly before it, those remaining claims should be dismissed on the grounds of *Burford* abstention. "*Burford* abstention arises when a federal district court faces issues that involve complicated state regulatory schemes." *Lehman v. City of Louisville*, 967 F.2d 1474, 1478 (10th Cir. 1992) (citing *Burford v. Sun Oil Co.*, 319 U.S. 315 (1943). "Where timely and adequate state-court review is available, a federal

---

[8] The Pooling Order was issued on March 22, 2019. Wildgrass's deadline to file a claim for judicial review pursuant to the State APA was April 26, 2019.

5

court sitting in equity must decline to interfere with the proceedings or orders of state administrative agencies: (1) when there are difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar; or (2) where the exercise of federal review of the question in a case and in similar cases would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern." *Western Ins. Co. v. A and H Ins., Inc.*, 784 F.3d 725, 727 (10th Cir. 2015) (quotation omitted).

Here, Wildgrass seeks only equitable relief—declaration that the Pooling Laws are unconstitutional and an injunction against enforcement of those laws. *See* Am. Compl., Prayer for Relief. On balance, the effect of such a ruling would do less to vindicate Wildgrass's alleged injuries than it would to bypass Colorado's legislature on important policy matters and substantially interfere with Colorado's ongoing development of its complex oil and gas regulatory scheme. *See Sierra Club v. Chesapeake Operating, LLC*, 248 F.Supp.3d 1194, 1202-05 (W.D. Okla. 2017) (dismissing challenge to Oklahoma's regulation of drilling related to seismic activity under *Burford* abstention). Abstention is an appropriate exercise of judicial discretion given the potential for such a disruptive result.

### C. The Commission properly asserted jurisdiction over Extraction's Pooling Application.

Colorado's state agencies, including the Commission, are "creatures of statute and have such powers and duties as the legislature gives them." *Maurer v. Young Life*, 779 P.2d 1317, 1337 (Colo. 1989). As such, those matters within the Commission's subject matter jurisdiction must be found within the Act and statutory pooling is one such matter. Wildgrass's claim that the Commission lacks authority to enter a statutory pooling order involving horizontal drilling and hydraulic fracturing for "non-fugacious" minerals, Am. Compl, ¶ 109, is not a due process claim;

6

it is a claim that the Commission misinterpreted or misapplied the Act. Wildgrass mischaracterizes its claim implicating due process and errs in its own interpretation of the Commission's jurisdiction to enter pooling orders.

The Commission is authorized to enter a pooling order where "two or more separately owned tracts are embraced within a drilling unit" and, "in the absence of voluntary pooling. . .enter an order pooling all interests in the drilling unit for the development and operation thereof." § 34-60-116(6), C.R.S. The Commission's statutory authority to enter pooling orders is not dependent on the applicability of the Rule of Capture to "non-fugacious" minerals and is not subject to any technological restrictions, such as hydraulic fracturing, as Wildgrass claims. *See* § 34-60-116(6)-(7), C.R.S.

Instead of looking to the Act or Colorado case law, Wildgrass claims that cases interpreting other states statutes limits the Commission's jurisdiction. *See* Am. Compl., ¶ 96 (citing ECF No. 43-1). These cases do not interpret Colorado law nor address statutory pooling laws of any state. Rather, they address the implications of hydraulic fracturing on other states' laws regarding trespass, conversion, and lease obligations to drill offset wells. *See id.* These cases do not limit the Commission's jurisdiction.

The Commission's rejection of Wildgrass's jurisdictional argument was legally correct and did not implicate, much less violate, Wildgrass's procedural due process rights. Accordingly, the Commission correctly declined to abandon subject matter jurisdiction over matters clearly within its statutory mandate. S*ee* § 34-60-102 (requiring the Commission to prevent waste and protect correlative rights)*; see also* § 34-60-116(6)-(7) (authorizing the Commission to enter pooling orders). At most, Wildgrass raises a policy argument for Colorado's legislature to

consider. See *Barnhart v. Sigmon Coal Co., Inc.*, 534 U.S. 438, 462 (2002) (holding that where statutes are clear, policy considerations are proper for the legislature, not the judicial branch).

> **D.   Mineral owners with standing to protest a pooling application, like Wildgrass, have a meaningful opportunity to be heard.**

"[T]he root requirement of the Due Process Clause [is] that an individual be given an opportunity for a hearing before he is deprived of any significant property interest." *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542 (1985) (citation omitted). Although the exact procedures required by the Constitution depend on the circumstances of a given case, "the fundamental requirement of due process is the <u>opportunity to be heard at a meaningful time and in a meaningful manner</u>." *PJ ex rel. Jensen v. Wagner*, 603 F.3d 1182, 1200 (10th Cir. 2010) (quoting *Mathews v. Eldgridge*, 424 U.S. 319, 333 (1976)) (emphasis added).

The Act provides any nonconsenting mineral owner subject to a pooling application with meaningful opportunity to be heard prior to any Commission action. The opportunity begins with an owner receiving an offer to lease and the Commission's Pooling Pamphlet at least 60 days before the Commission considers any pooling application. § 34-60-116(7)(d)(I), C.R.S. The Pooling Pamphlet explains that a mineral owner has many options, including negotiating with the operator who offered the lease, leasing to a third party, or protesting the application if they believe the offer is not reasonable.[9] Then, owners must be provided notice of the pooling application hearing. § 34-60-108(2), C.R.S.

To object to the lease offer as unreasonable, unjust, or unfair, any owner may file a protest with the Commission pursuant to Commission Rules 509.a.(2) and 530. Once protested, all parties to the pooling application are entitled to full and robust adjudicatory proceedings,

---

[9] An example of the Pooling Pamphlet is included in Exhibit B to Wildgrass' Motion for Temporary Restraining Order, ECF No. 20.

including a hearing before the Commission. *See* Commission Rules 527, 528, and 530. Finally, prior to entering a pooling order, the Commission must ensure that every pooling order is "upon terms and conditions that are just and fair." §34-60-116(6), C.R.S.

Here, upon protesting Extraction's Pooling Application, Wildgrass was afforded reasonable discovery, *see* Am. Compl., ¶¶ 51-52; the opportunity to make and respond to both written motions before hearing, *see id*. at ¶ 53-60 and 96, and oral motions at hearing, *see id*. at ¶¶ 60-63 and 95; the opportunity to submit written evidence and testimony, *see id*. at ¶¶ 59, 82, and 86; and the opportunity to make argument to the Commission. *See id*. at ¶¶ 72, 76, 81, and 83. Contrary to Wildgrass's allegations, the Commission found that it had jurisdiction. *See* Commission Order 407-2771, ECF No. 44-1 at ¶ 4.Ultimately, Wildgrass's discontent with the outcome of the Commission's proceedings do not amount to a plausible claim for facial or as applied violations of its procedural due process rights.

## II. Due Process – Substantive

Wildgrass claims its substantive due process rights were violated because the Act "deprives Wildgrass Owners of property rights implicit in the concept of ordered liberty, and regulates Wildgrass Owners' private property without an adequate state interest." Am. Compl., ¶110. Wildgrass also argues that the Act's statutory pooling provisions are vague, *id.* at ¶ 107, and effect an impermissible taking. *Id*. at ¶¶ 112 and 115. Wildgrass fails to state a plausible claim for relief under substantive due process because statutory pooling does not implicate a fundamental right, is rationally related to legitimate state interests, and is not a taking.

### A. Colorado's Pooling Laws do not affect fundamental rights and are thus subject to rational basis review.

Courts limit the rights protected by substantive due process to "those fundamental rights and liberties which are, objectively, deeply rooted in this Nation's history and tradition. . . and

9

'implicit in the concept of ordered liberty,' such that 'neither liberty nor justice would exist if they were sacrificed[.]'" *Washington v. Glucksberg*, 521 U.S. 702, 720-21 (1997) (quoting *Palko v. Connecticut*, 302 U.S. 319, 325, 326 (1937)). Property rights are not fundamental rights and are therefore only subject to rational basis review. *Clajon Prod. Corp. v. Petera*, 70 F.3d 1566, 1580 (10th Cir. 1995) ("Economic regulations—i.e., those burdening one's property rights—have traditionally been afforded only rational relation scrutiny under the Equal Protection Clause."). Rational basis review is a limited review, not the heightened scrutiny advocated for by Wildgrass. *See id.* ("Under this standard of review, which is a 'paradigm of judicial restraint,' courts must presume the statutory scheme is constitutional and uphold it unless it 'rests on grounds wholly irrelevant to the achievement of the State's objective.'")(citations omitted).

### B. Colorado's Pooling Laws are a valid exercise of police power rationally related to important state interests.

Federal and Colorado courts have found that property rights in oil and gas ownership are subject to a valid exercise of the police power of the state. *See e.g., Hunter Co. v. McHugh*, 320 U.S. 222, 225 (1943) (recognizing that "a state has constitutional power to regulate production of oil and gas so as to prevent waste and to secure equitable apportionment); *see also State Corp. Comm'n of Kansas v. Wall*, 113 F.2d 877, 881 (10th Cir. 1940) (finding that "the state has the power to regulate the production of oil and gas for the purpose of preventing waste and protecting the correlative rights").

The Act, including statutory pooling, is inextricably related to "a significant interest on the part of the state in the efficient and fair development, production, and utilization of oil and gas resources in a manner calculated 'to prevent waste and to protect the correlative rights of common-source owners and producers to a fair share of the production profits.'" *Voss v. Lundvall Bros.*, 830 P.2d 1061, 1065–66 (Colo. 1992) (citations omitted). Thus, as a valid

10

exercise of the State's police power "[t]he rights of the individual which may be affected thereby must give way to the superior rights of the public, and he cannot complain that his property is taken without due process of law or without compensation first paid to him." *Swisher v. Brown*, 402 P.2d 621, 625-26 (Colo. 1965) (internal quotations omitted).

### C. Statutory pooling is not a taking.

Wildgrass appears to assert that statutory pooling effects an unconstitutional taking. S*ee* Am. Compl., ¶¶ 110-13. However, this allegation is contrary to a substantial body of case law consistently upholding pooling laws as constitutional and not a taking. In fact, Wildgrass does not cite any court decision declaring statutory pooling laws an unconstitutional taking and the Commission is unaware of any such decision.

Most recently, in *Kerns v. Chesapeake Expl., LLC*, No. 18-3636, 2019 WL 423140 (6th Cir., Feb. 4, 2019), the Sixth Circuit surveyed court decisions on constitutional challenges to pooling and found that Ohio's pooling laws were a proper exercise of state authority to regulate oil and gas production and did not affect a taking. In *Kerns*, the court reviewed Ohio's pooling laws, which are substantially similar to Colorado's in most regards including imposition of up to a 200% risk penalty for "nonparticipating" owners. Ohio Rev. Code Ann. § 1509.26-27. In its survey, the Sixth Circuit found that "[e]very state court to address this issue [of statutory pooling] has held that pooling schemes, like Ohio's do not effect a taking of a landowner's minerals." *Kerns* at 6 (citing *Patterson v. Stanolind Oil & Gas Co.*, 77 P.2d 83, 89 (Okla. 1938); *Gawenis v. Ark. Oil & Gas Comm'n*, 464 S.W.3d 453 (Ark. 2015); Sylv*ania Corp. v. Kilborne*, 271 N.E.2d 524 (N.Y. 1971)). The Sixth Circuit concluded that pooling procedures are not a taking but a proper exercise of states' police powers "in the service of protecting property rights by requiring a just, orderly, and efficient process for neighbors to extract common resources." *Id*. (citing *Cities Serv. Gas Co.*, v. Peerless Oil & Gas Co., 340 U.S. 179, 185-86 (1950)). Wildgrass

11

cannot distinguish Colorado's Pooling Laws from those that courts have uniformly held to be a constitutional exercise of police powers and thus fails to state a plausible claim for relief.

### D. Colorado's Pooling Laws are not vague.

Wildgrass next alleges the Act is unconstitutionally vague. Am. Compl., ¶ 107. To succeed on a facial challenge for vagueness, a plaintiff "must demonstrate that the law is impermissibly vague in all of its applications." *Dias v. City & Cty. of Denver*, 567 F.3d 1169, 1180 (10th Cir. 2009). Here, no part of the Pooling Laws are vague, however even "a statute with some arguably vague elements is not automatically vague on its face in violation of the Fourteenth Amendment." *Id*. And, because of the interests at issue, "[e]conomic regulation is subject to a less strict vagueness test." *Vill. of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 498 (1982) (upholding ordinance regulating the sale of drug-related items). Wildgrass fails to state a plausible claim for unconstitutional vagueness for two reasons.

First, Wildgrass does not specify which terms or provisions of the Act or Pooling Laws it believes are impermissibly vague. Instead, Wildgrass makes the conclusory statement that "as an example of substantive due process . . . the statute lacks clarity,. . .was written for a different time,. . .is hard to apply and doesn't always make sense." Am. Compl., ¶ 108. This is a conclusory statement of opinion. The Court need not accept conclusory statements like this as true when evaluating the sufficiency of the Complaint against a Rule 12(b)(6) motion to dismiss. *See Khalik,* 671 F.3d at 1190.

Second, the requirement for reasonable lease offers is not vague. Section 34-60-116(7)(d), C.R.S. provides that the Commission must find "that the unleased mineral owner has been tendered . . . a reasonable offer to lease upon terms no less favorable than those currently prevailing in the area at the time the application for order is made . . .." The Act defines a "reasonable" lease with common words that require a comparison of the terms in the offered

12

lease to terms of other leases in the same area. In accordance with this statutory guidance, the Commission promulgated Rule 530, specifying the Commission is to review executed leases in the unit to be pooled when determining the reasonableness of the lease offer at issue. Rule 530.b.(2). Given the plain meaning of the Act and additional guidance in Rule 530, the Pooling Laws are not vague as "[i]t is unlikely that anyone would not understand the common words used in the statute." *Hill v. Colorado*, 530 U.S. 703, 705 (2000).

### III. Freedom of Speech and Association

Wildgrass next claims, that statutory pooling violates freedom of association because pooling forces mineral owners to "associate" with oil and gas companies, compels mineral owners to "subsidize private speech" or operators of oil and gas companies, and "[compels] individuals to mouth support for views they find objectionable." Am. Compl., ¶¶ 120 – 124. Wildgrass fails to support its claim.

A violation of the right to speech or association necessarily includes a relation to speech or expressive conduct. Freedom of speech includes the right to "eschew association for expressive purposes." *Janus v. Am. Fed'n of State, Cty., & Mun. Employees, Council 31*, 138 S. Ct. 2448, 2464 (2018). While "[c]ompelling a person to subsidize the speech of other private speakers raises similar First Amendment Concerns[,]" *id.*, no speech, compelled or otherwise, occurs as a result of statutory pooling.

In *Glickman,* the United States Supreme Court held that freedom of speech was not abridged where the regulatory scheme at issue (1) imposed no restraint on the freedom of any producer to communicate any message to any audience, (2) did not compel any person to engage in any actual or symbolic speech, and (3) did not compel any person to endorse or to finance any political or ideological views. *Glickman v. Wileman Bros. & Elliott*, 521 U.S. 457, 469–70 (1997). All of these characteristics are present in the Pooling Laws so Wildgrass's claim fails.

13

First, a pooled mineral owner may communicate any message to any audience. Second, being pooled does not require any mineral owner to engage in any expressive conduct. Third, statutory pooling does not require mineral owners to endorse or finance any political views. Additionally, aside from unsubstantiated conclusory statements, *see* Am. Compl., ¶ 121, Wildgrass has not provided any legal or factual support for the theory that nonconsenting owners are subsidizing the speech of any third party. Wildgrass fails to state a plausible claim for relief that the Pooling Laws violate the Freedoms of Speech or Association.

### IV.   Contracts Clause

Wildgrass claims that statutory pooling "impairs the obligation of contracts" because it "impairs non-consenting owners' ability to negotiate the value, rights, and duties of a contract with a private oil and gas company." Am. Compl., ¶ 129.

Statutory pooling does not create a contract or a contractual relationship between nonconsenting mineral owners and oil and gas operators. The Colorado Supreme Court determined that when a mineral owner is statutorily pooled "there is no contract" and that any obligations between the parties are defined by the Act. *Grant Bros. Ranch, LLC v. Antero Res. Piceance Corp.*, 409 P.3d 637, 643 (Colo. App., 2016). In the absence of a contract, there is no plausible violation of the Contracts Clause because it, only prohibits a state from "enter[ing] into any . . . Law impairing the Obligation of Contracts." U.S. Const., Art.I, § 10, cl. 10.

### V.   The Eleventh Amendment bars all claims for prospective relief against the Governor due to his non-participation in statutory pooling.

The U.S. Constitution's Eleventh Amendment "does not bar a suit against state officials in their official capacities if it seeks prospective relief for the officials' ongoing violation of federal law." *Harris v. Owens*, 264 F.3d 1282, 1290 (10th Cir. 2001). But the state official "must have some connection with the enforcement of the act, or else [the plaintiff] is merely making

14

him a party as a representative of the state, and thereby attempting to make the state a party." *Peterson v. Martinez*, 707 F.3d 1197, 1205 (10th Cir. 2013) (quoting *Ex Parte Young*, 209 U.S. 123, 157 (1908)). As a result, the state official "'must have a particular duty to 'enforce' the statute in question and a demonstrated willingness to exercise that duty.'" *Id.* (quoting *Prairie Band Potawatomi Nation v. Wagnon*, 476 F.3d 818, 828 (10th Cir. 2007)). The necessary connection "must be fairly direct; a generalized duty to enforce state law…will not subject an official to suit." *Los Angeles Cty. Bar Ass'n v. Eu*, 979 F.2d 697, 704 (9th Cir. 1992).

Wildgrass's sole allegation against the Governor is that the Governor is "required by the Colorado Constitution to ensure that all laws of the state are faithfully executed." Am. Compl., ¶13. The Amended Complaint is devoid of any allegation that the Governor has a particular duty to enforce the statutory pooling provisions of the Act. This is likely because, as a matter of law, he has none.[10] *See* § 34-60-116(6), C.R.S. (granting only the Commission the authority to enter pooling orders). Any prospective relief entered against the Governor also would have no practical effect because only the Commission issues pooling orders. *Owens*, 264 F.3d at 1290.

## CONCLUSION

The State respectfully requests that the Court dismiss Wildgrass's Amended Complaint in its entirety for failing to state claims upon which relief can be granted and that the Court dismiss the Governor as a party with prejudice, regardless of its disposition on Wildgrass's claims.

---

[10] *Developmental Pathways* does not support Plaintiff's position because the Commission has already been appointed. *Development Pathways v. Ritter*, 178 P.3d 524 (Colo. 2008).

Respectfully submitted this 10th day of May, 2019.

        PHILIP J. WEISER
        Attorney General


        */s/ David A. Beckstrom*
        DAVID A. BECKSTROM, #44981*
        Assistant Attorney General
        KYLE W. DAVENPORT, #36674*
        Senior Assistant Attorney General
        ERIC R. OLSON, #36414*
        Solicitor General
        WILLIAM V. ALLEN, #26386*
        Senior Assistant Attorney General

Ralph L. Carr Colorado Judicial Center
1300 Broadway, 7th Floor
Denver, Colorado 80203
Telephone: (720) 508-6306
Fax: (720) 508-6039
E-Mail: david.beckstrom@coag.gov,
kyle.davenport@coag.gov, eric.olson@coag.gov,
will.allen@coag.gov

*Attorneys for the Defendants*
*Counsel of Record

## CERTIFICATE OF SERVICE

I hereby certify that on May 10, 2019 I served a true and complete copy of the foregoing MOTION TO DISMISS upon all parties through ECF or as indicated below:

Joseph A. Salazar
COLORADO RISING FOR COMMUNITIES
P.O. Box 370
Eastlake, CO  80614-0370


Mark J. Mathews
Stanley L. Garnett
David B. Meschke
BROWNSTEIN HYATT FARBER SCHRECK, LLP
410 Seventeenth Street, Suite 2200
Denver, CO 80202-4432

>  */s Linda Miller*
>  LINDA MILLER